## UNITED STATES v. ONE 1948 PLYMOUTH SEDAN, SERIAL NO. 9645900.

### Civ. No. 1705.

United States District Court
D. North Dakota, Southeastern Division.

Jan. 20, 1950.

See, also, D.C., 87 F.Supp. 281.

P. W. Lanier, U. S. Atty., Fargo, N. D., for libelant.

Norman G. Tenneson, Fargo, N. D., Joseph J. Cohen, Winnipeg, Manitoba, Canada, for libelee and claimant.

VOGEL, District Judge.

In the instant case, the United States of America has instituted a libel proceedings against a Plymouth automobile owned by one Jacob P. Siemens, who is a citizen and resident of the Dominion of Canada. It is claimed by the United States that under the provisions of 19 U.S.C.A. § 483, the Plymouth automobile is subject to seizure and forfeiture. Insofar as it is applicable herein, that section reads as follows:

"§ 483. *Forfeitures; penalty for aiding unlawful importation.*

"(a) * * * All vehicles * * * used in, or employed to aid in, or to facilitate by obtaining information or otherwise, the unlading, bringing in, importation, landing, removal, concealment, harboring, or subsequent transportation of any merchandise upon the same or otherwise unlawfully introduced, or attempted to be introduced into the United States, shall be seized and forfeited. * * *"

The case was tried to the Court. Numerous witnesses testified in behalf of the United States. The Claimant, Siemens, appeared by Canadian and local counsel but was not present personally, his deposition was not taken, and no evidence was offered in his behalf.

It appears that in 1948 numerous combines were purchased by persons in the United States from sources in the Domin-

ion of Canada and were smuggled across the international boundary line without the required declarations or the obtaining of the necessary permits. Jacob P. Siemens, the owner of the Plymouth automobile involved, resided at Winkler, Manitoba, Canada. He was the owner of a combine which subsequently was purchased from him by one Ted Ziegler, a citizen and resident of the State of Minnesota. Negotiations for the purchase were made through one John D. Janzen, a Canadian citizen. The combine was originally located at Winkler on the property of Siemens. Siemens and Janzen, in order to collect a down payment on the combine, drove in Siemens' car, the Plymouth automobile which is the subject of this action, from Winkler, Manitoba, Canada, to Ziegler's farm in Minnesota.

Janzen, in the presence of Siemens, told Ziegler that they came there for the purpose of getting a down payment. Ziegler asked if a $500.00 down payment was enough and Siemens said that that was "O.K." Siemens refused to take the $500.-00 from Ziegler personally. Janzen, however, accepted the $500.00 and carried it with him, in company with Siemens, and riding in the Plymouth automobile, back into Canada where he then gave the $500.-00 to Siemens. About five days thereafter Ziegler appeared at Winkler and paid Siemens $3500.00, which was the balance of the purchase price of the combine.

Siemens subsequently told Janzen that he had had the combine moved from Winkler in order to keep the Royal Canadian Mounted Police from "spotting it". Siemens directed Janzen to a point six miles north of Winkler where the combine could be loaded. Janzen located the combine there, loaded it and hauled it to a point on a highway just north of the international boundary line, not opposite a port of entry and where Ziegler could get it and haul it across into the United States.

It is Siemens' contention that he had a perfect right to sell the combine to anyone he chose and that it was not his affair how the combine was subsequently transported into the United States and whether or not that transportation was a violation of the laws of the United States. He did not violate any of the laws of the Dominion of Canada and he contends that he had nothing to do with the violation of the laws and regulations of the United States, if there was such violation. (Ziegler pleaded guilty to a charge of unlawfully conspiring to import merchandise, including the combine sold to him by Siemens.)

■ Counsel for neither side have been able to cite any case which is helpful to the Court in the determination of the problem presented. In a nutshell, the question is this: Is an automobile, which is used in obtaining a down payment to bind the sale of merchandise that is to be smuggled, "used in, or employed to aid in, or to facilitate by obtaining information or otherwise, the * * * bringing in, importation, * * * or subsequent transportation of any merchandise upon the same or otherwise unlawfully introduced * * *" so as to be subject to seizure and forfeiture?

The automobile was used to transport both Janzen and Siemens on a mission which was a part and probably an integral part of the entire transaction. Accepting a down payment was certainly aiding and facilitating the subsequent importation. Without the payment it is safe to say negotiations would have terminated. Even if that be not so, the acceptance of the payment speeded the subsequent actions or smoothed the way for them. It cannot be said that it did not aid or facilitate what followed.

In determining whether the automobile was used in or aided or facilitated the subsequent unlawful transportation of the combine, we must not overlook the activities of Janzen. The automobile transported him also. He was the party through whom Siemens and Ziegler originally dealt. He was transported by Siemens in the Plymouth automobile involved. We cannot measure the liability of the automobile to seizure and forfeiture by the activities of the owner alone. No such restriction is found in or intended by 19 U.S.C.A. § 483, supra. The owner need not have been present or been a participant. If Janzen's activities while an occupant of the auto-

mobile amounted to aiding and facilitating the subsequent unlawful acts, then the automobile was "used" as intended in the statute. In the instant case, however, we need pursue that point no further, because Siemens, the owner, was present on the entire trip. He claims that the combine was sold by him to Janzen—not Ziegler—and makes point of the fact that he refused to accept the $500.00 in the United States or directly from Ziegler, although he admits that he did accept it from Janzen in Canada and subsequently accepted the balance of $3500.00 in Canada direct from Ziegler. The claim that he did not sell to Ziegler and had no dealings with him may be classified as an *ipse dixit* and dismissed as such.

The wording of the statute is sufficiently broad to include the use of an automobile in the manner in which the automobile in question was used herein. But the problem is still not without its difficulties. Suppose Siemens and Janzen were completely innocent participants and fully believed or had every reason to believe that Ziegler intended to obtain a permit to import the combine and to properly declare it at a port of entry? The injustice of seizing an innocent person's property under such circumstances is manifest. Canadian counsel for Siemens, in his argument before the Court, referred to the friendly relations between this country and the Dominion of Canada and indicated that the seizure of a Canadian citizen's property under circumstances such as are present in the instant case would be a detriment to the continuance of such amicable relationship. The charge of unfriendliness or inhospitality to a citizen of Canada loses its sting, however, when Siemens' every act indicates that he was thoroughly aware, through the entire negotiations, that Ziegler intended an unlawful importation of the combine which he, Siemens, was selling to him through Janzen.

There is, first, his refusal to personally accept the $500.00 down payment while in the United States and his insistence that Janzen carry the funds across the boundary and then make delivery of the money to him in Canada. There is, second, his removal of the combine from his premises in Winkler to a point six miles north thereof for the express purpose of trying to keep it from being observed by the officers of the Royal Canadian Mounted Police, who apparently were cooperating with the United States authorities in an attempt to prevent the smuggling of combines. (A friendly act on the part of Canadian officials which reflects the true state of relationship between the United States and the Dominion of Canada.) There is, further, Siemens' direction to Janzen as to the location of the combine and his admission as to his reason for moving it there. There is Janzen's loading of the combine and hauling it to a point on a highway immediately north of the border where no port of entry was located. All of Siemens' actions (as well as Janzen's) smack of bad faith and of complete cognizance of what Ziegler intended doing; namely, the unlawful importation of the combine into the United States.

This Court may not wink at or close its eyes to the meaning of Siemens' acts. To do so would be to stultify itself or would be trading fact for fiction. Siemens well knew of the intended unlawful importation and knowingly participated in the preliminaries. His cunning attempt to evade responsibility by letting Janzen do the dangerous work while he reaped the benefits will not serve him now as a shield to prevent forfeiture of his property used in violation of the law.

Siemens is under indictment by a Grand Jury of this Court on a charge of conspiracy to violate the tariff laws of the United States. It is evident that that is the reason he did not personally appear at the time this case was tried. The case has, however, been pending for a considerable period, and his deposition could have been taken. Failure of a party to appear or to testify as to facts within his knowledge raises the presumption that the testimony, if it had been given, would have been unfavorable to him.

From the testimony adduced, the Court specifically finds that the automobile proceeded against was the automobile used by Siemens and Janzen in driving from Wink-

ler, Manitoba, Canada, to the Ziegler farm in Minnesota for the purpose of obtaining a down payment on the combine Ziegler subsequently smuggled and that the automobile was knowingly and intentionally used in and employed to aid in and to facilitate the obtaining of information with reference to the unlawful importation of the combine into the United States. Counsel for the Government is directed to prepare and submit proposed Findings, Conclusions and Order for Judgment in harmony with the foregoing and serve copy of the same upon counsel for the Claimant.

It will be so ordered.